IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SALEENA BOWEN, as Personal Representative
of the Estate of JESS ENDICOTT, SR., deceased,
and as Personal Representative of the Estate
of JESS ENDICOTT, JR., deceased,

        Plaintiff,

v.                                        CIVIL ACTION NO.   3:12-9226

NORFOLK SOUTHERN RAILWAY COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant's Motion for Summary Judgment, ECF No. 81, and in the alternative, Defendant's Motion for Partial Summary Judgment Relative to the Negligence of the Endicotts, ECF No. 83. For the reasons below, Defendant's Motion for Summary Judgment, ECF No. 81, is **GRANTED**, and Defendant's Motion for Partial Summary Judgment, ECF No. 83, is **DENIED as moot**. The Court **GRANTS** summary judgment in favor of Defendant as to all Counts.

**I.     Background**

This wrongful death action arises from a collision at a private railroad crossing between a truck and a train, which killed both occupants of the truck: Jess Endicott, Sr., and his adult son, Jess Endicott, Jr. The elder Endicott was the driver of the truck and the younger was his passenger. The Complaint alleges that Defendant Norfolk Southern Railway Company—the owner and operator of the train—is liable for the deaths of the decedents, and seeks compensatory damages,

punitive damages, attorney's fees, and court costs. Compl. 4-6, 9-10 & ¶¶ 11, 14, 22, 25, ECF No. 1-1. The Complaint alleges that Defendant negligently failed to inspect and maintain the crossing and the rolling stock, and that Defendant negligently operated the train—despite the fact that it should have known, or did know, that traffic routinely crosses the tracks at the crossing—by not keeping a proper and sufficient lookout, by proceeding at a speed which was greater than reasonable and proper, by failing to decrease its speed to avoid colliding with the decedents' truck, and by failing to warn that the train was approaching the crossing by sounding the train's whistle. *Id.* ¶¶ 10, 21. In support of her request for punitive damages, Plaintiff Saleena Bowen, as administratrix of the decedent's estates, also alleges that the acts or omissions of Defendant and its employees were willful, wanton, malicious, reckless, and done with a callous disregard for the rights, safety, health, and well-being of the decedents. *Id.* ¶¶ 13, 24. Defendant filed counterclaims against both estates, seeking implied indemnity and contribution based upon the alleged negligent actions of both decedents, including "the negligent operation of the vehicle at issue, the negligent entrustment of the operation of the vehicle at issue, and the negligent failure of the passenger to warn of an oncoming train at the time of the incident." Def.'s Answer & Countercl. 14, EFC No. 9.

After the close of discovery, Defendant filed the instant Motion for Summary Judgment, arguing, *inter alia*, that the duty owed by Defendant to the decedents, as trespassers on a private railroad crossing, was merely to refrain from willfully or wantonly injuring them. Plaintiff responded that the proper duty to be applied to this case was reasonable care. Defendant filed its Reply. Thus, the Motion for Summary Judgment is ripe for review.

## II. Standard for Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Id.* at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate, however, when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252. Summary judgment is also appropriate when the inquiry involves a pure question of law. *Taft v. Vines*, 70 F.3d 304, 316 (4th Cir. 1995), *vacated en banc on different grounds*, 83 F.3d 681 (4th Cir. 1996).

### III. Relevant Undisputed Facts

On March 19, 2011, shortly after mid-day, Jess Endicott, Sr., and his adult son and passenger, Jess Endicott, Jr., were driving along U.S. Route 52, in Wayne County, West Virginia. Jess Endicott, Sr., saw an acquaintance, Wiley Hatten, traveling in the opposite direction on the same highway and flashed his lights at Hatten to get him to pull over. After some brief

-3-

conversation, it was decided that the Endicotts were going to Hatten's cousin's dairy farm, just south on U.S. Route 52.[1] Hatten followed them.

In the vicinity of the dairy farm, three train tracks run parallel to U.S. Route 52 along its west side, and there is no obstruction blocking the view between the tracks and the road for a substantial distance while both travel straight. The farm is on the other side of the train tracks and can be accessed from U.S. Route 52 via a private crossing that traverses the tracks perpendicular to both the road and the tracks. While the Endicott truck approached the crossing, heading south on U.S. Route 52, a train was approaching on the third and farthest track from U.S. Route 52—closest to the farm—, also heading south. The other two tracks were empty.

On the U.S. Route 52 side of the private crossing to the farm, there is a stop sign, a sign indicating a private railroad crossing, and a sign which says, "Look," with a double-sided arrow above it. Several hundred feet before the crossing, the Endicott truck pulled off of U.S. Route 52 onto the berm between the highway and the tracks, travelled along the berm, turned right at the crossing, did not stop at the stop sign, and travelled directly into the path of the oncoming train. The train was travelling at 41.2 miles per hour, and it blew its horn four times beginning right as the truck began making the right-hand turn into the crossing (about 3 to 4 seconds before the truck

---

[1] The parties dispute whether Hatten invited or gave permission to the Endicotts to go to the farm. At his deposition, Wiley Hatten stated the following:

> Q: . . . And what did [the Endicotts] say to you?
> A: [One of the Endicotts] wanted to know if I had any junk up to the farm or that meant scrap metal. . . . I told them Frank [the nephew of the owner of the farm] had said one time they might have had some old hay feeders there, but I didn't know.
> Q: And was it your understanding that they were going to go up to the farm then?
> A: He wanted to go up and look and see what was there then. . . . I told them I'd turn around and come back up there, because I'd need to show them where it was at that I'd seen the old bail feeders.

Hatten Dep. 7:12 - 7:21, 9:23 - 10:15, Nov. 8, 2013, ECF No. 96-4.

was hit by the train).[2] The train started braking at the point of impact, and it took over a minute for it to fully stop.

### IV. Analysis

It is Plaintiff's burden to prove the four elements of common-law negligence for each claim asserted in the Complaint. *Hersh v. E-T Enterprises, Ltd. P'ship*, No. 12-0106, 2013 WL 6050953, at *14 (W. Va. Nov. 12, 2013). Thus, before Defendant may be held legally liable, Plaintiff must show that 1) Defendant owed a duty to the decedents, 2) the duty was breached, and 3) the breach of duty was the proximate cause of 4) Plaintiff's injury. *Id.* The resolution of this Motion for Summary Judgment is found in the elements of duty and breach.

The duty owed by train operators to those using railroad crossings in West Virginia varies depending upon whether the crossing involved is a public or a private crossing. *Daugherty v. Baltimore & O. R. Co.*, 64 S.E.2d 231, 242-43 (W. Va. 1951). Here, the parties agree that this was a private crossing. In order to be owed a duty of reasonable care, those who cross at a private crossing must "do so under legal right or at the invitation of the [railroad] company." *Id.* at 243. For instance, the owner of the farm for which a private crossing is created uses the crossing under legal right. *Id.* Any traveler who uses the crossing without such right or invitation from the railroad is owed "no duty greater than that which is due to a trespasser,"[3] which is the duty to "refrain from

---

[2] Plaintiff notes that "there is evidence the train's horn was never blown two [sic] warn of the train's approach"—namely, the depositions of two witnesses who said that they did not hear the horn. Pl.'s Resp. 5-6, ECF No. 96. However, Plaintiff does not contest the authenticity of the Railview video of the accident, which clearly and audibly reveals that the horn was in fact blown four times. Railview Video 12:43:55 – 12:43:59, ECF No. 81-2. In a case similarly containing videotape evidence, the U.S. Supreme Court stated, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Such is the case regarding the train's use of its horn here. Thus, the Court does not find Plaintiff's objection regarding the horn to be a *genuine* issue of material fact.

[3] The Court notes that *Daugherty*, the case from which this public versus private crossing standard originates, was decided in 1951, before the West Virginia Supreme Court of Appeals in *Mallet v. Pickens*, 522 S.E.2d 436 (W. Va.

willful or wanton injury." *Mallet v. Pickens*, 522 S.E.2d 436, 446 (W. Va. 1999); *Daugherty*, 64 S.E.2d at 243.

   Plaintiff argues that the decedents were owed a duty of reasonable care because Wiley Hatten "invited" them to the farm for which the crossing was created. Putting aside both the issue of whether Hatten actually invited or gave permission to the decedents and the issue of whether the owner of the farm could confer a legal right to be on the crossing to a third party, there is still one major flaw in Plaintiff's argument: Wiley Hatten was not the owner of the farm; instead, his cousin, Dale Hatten, owned the farm. Hatten Dep. 7:12 – 7:18.[4] It is Plaintiff's burden to prove that a higher level duty was owed to the decedents than that which is normally conferred upon non-owners who cross at a private crossing, and she has failed to do so. Thus, the decedents were owed a duty on the part of Defendant to refrain from willful or wanton injury. Plaintiff offers absolutely no evidence—even contested evidence—of any willful or wanton conduct on the part of Defendant. Therefore, Defendant's Motion for Summary Judgment must be granted for Defendant on all Counts.

   In the alternative, even if Plaintiff's decedents were owed a duty of reasonable care, Plaintiff has failed, as a matter of law, to show a breach of that duty by Defendant. Plaintiff argues that Defendant failed to exercise reasonable care because 1) the train failed to sound its horn, 2) if the horn was sounded at all, the train should have sounded its horn earlier, when the truck first

---

1999), changed the duties owed by landowners to those injured on their land by collapsing the categories of invitee and licensee into one category to which attaches the higher-level standard of care previously reserved only for invitees. *Mallet*, 522 S.E.2d at 446. Though *Daugherty* includes some analysis which relies upon the division between invitees and licensees, the Court has found no indication that *Mallet* changes the holding from *Daugherty* that "[i]n order to impose upon the [railroad] company the duty to treat a place as a public crossing [by using the reasonable care standard], those who use the place as a crossing must either have a legal right to so use it, or must use it at the invitation of the company." *Daugherty*, 64 S.E.2d at 243. However, in an abundance of caution, the Court will also analyze Plaintiff's claims under the reasonable care standard.

[4] Plaintiff does not contest this fact, despite that it was noted in Defendant's Reply, and the support for this fact comes from Plaintiff's own exhibit. Def.'s Reply 8.

exited the highway onto the berm, and 3) the engineer should have used the emergency brake application sooner.[5]

First, the Court has already explained that it will not lend credence to the evidence Plaintiff offers in support of her argument that the train failed to sound its horn, given that such evidence is in direct contradiction with the uncontested videotape of the accident in this case such that no reasonable juror could believe it. *Sawyer v. Asbury*, No. 12-2123, 2013 WL 4056186 (4th Cir. Aug. 13, 2013) ("[I]ncontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court when resolving a motion for judgment as a matter of law, if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." (internal quotation marks omitted)). Thus, Plaintiff's claim that Defendant failed to exercise reasonable care because the train failed to sound its horn is without merit.

Plaintiff's expert Paul Byrnes states that the train should have sounded its non-emergency horn earlier, when the truck first exited the highway onto the berm, about ten seconds before the emergency horn was in fact sounded.[6] Byrnes admits that this would be solely a prophylactic measure because no danger to the truck was apparent at that point. Byrnes Dep. 61:22-62:7, 68:11-69:5, 70:2-73:23, Nov. 20, 2013, ECF No. 96-5. Both federal law and West Virginia law recognize the difference between public and private crossings by imposing higher duties upon trains at public crossings than at private crossings. For instance, federal law specifically requires

---

[5] The Court notes that Plaintiff does not offer any evidence—or argument—in support of the majority of the negligence claims that she alleges against Defendant in her Complaint, including that 1) Defendant negligently failed to inspect and maintain the crossing and the rolling stock and that 2) Defendant negligently operated the train a) by not keeping a proper and sufficient lookout and b) by proceeding at a speed which was greater than reasonable and proper. These claims are, thus, properly disposed of now in the context of this Motion for Summary Judgment.

[6] Plaintiff states that the train's engineer and conductor saw the Endicott truck pull off of U.S. Route 52 onto the berm, but she provides no supporting evidence. The deposition of Daniel Conley, the engineer, directly contradicts Plaintiff's assertion, and the deposition of Richard Lakin, the conductor, is missing the page cited to by Plaintiff.

that "the locomotive horn on . . . a train . . . be sounded when such . . . is approaching a *public* highway-rail grade crossing . . . . [The horn] shall begin to be sounded at least 15 seconds, but no more than 20 seconds, before the locomotive enters the crossing." 49 C.F.R. § 222.21(a), (b)(2) (emphasis added). There is no comparable regulation requiring prophylactic horn-blowing by trains at private crossings. In *Daugherty*, the West Virginia Supreme Court of Appeals states, "A railroad company is not generally under the obligation of giving signals or slackening the speed of its trains on approaching farm or private crossings. But, although the statute requiring the giving of signals at crossings may not apply to farm crossings, yet the duty of exercising reasonable care may require the giving of some warning at farm crossings, *when they are peculiarly dangerous and when the train is approaching at great speed*." *Daugherty*, 64 S.E.2d at 243 (emphasis in original removed) (emphasis added) (internal quotation marks omitted). There is no indication that this crossing is peculiarly dangerous. In fact, in light of the long unobstructed view of the straight tracks and the signage at the crossing, quite the opposite is apparent. Given that the train was travelling at 41.2 miles per hour—well within the 60 mile per hour limit imposed by federal regulation[7]—, Plaintiff abandoned her initial claim that the train was travelling at an excessive speed. Both federal regulation and *Daugherty* dictate that Plaintiff's decedents were not owed a duty by Defendant that it prophylactically sound its horn when the Endicott truck exited the highway. Here, Plaintiff is attempting to back-door a higher duty onto Defendant despite a clear policy choice by the federal government to only impose such a higher duty on railroads at a *public* crossing.[8] No such duty exists in this case; thus, Plaintiff's claim that Defendant failed to exercise

---

[7] 49 C.F.R. § 213.9(a); Byrnes Dep. 80:4-80:25.
[8] The point at which Byrnes suggests that the horn should have been blown in this case falls within the range of 15 to 20 seconds before the train reached the crossing, precisely at which point a train approaching a public crossing would be required to sound its horn. Byrnes Dep. 70:7-70:13.

-8-

reasonable care because the train should have sounded its horn earlier, when the truck first exited the highway onto the berm, fails.

Even were this Court to fully credit Byrnes's claim[9] that the engineer should have applied the emergency brakes sooner, Byrnes himself—and Plaintiff's other two experts—recognized that, even if the brake was applied at the earlier point at which Byrnes thought it should have been applied, the same accident would have nevertheless occurred. Byrnes Dep. 39:20 – 46:15. Thus, Plaintiff's claim that Defendant failed to exercise reasonable care because the engineer should have used the emergency brake application sooner fails for lack of proof of proximate causation.

The Court notes that the facts in this case are very similar to those in *Daugherty*, though more favorable to Defendant here, given that the view of the tracks from the highway was unobstructed for a great distance. In *Daugherty*, the Court held that "[f]rom the undisputed evidence bearing upon the material and controlling facts . . . , the only conclusion that can be reached by reasonable men is that the defendant was not guilty of any negligent act which proximately caused the death of either decedent." *Daugherty*, 64 S.E.2d at 245. Such is the case here.

## V. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment, ECF No. 81, is **GRANTED**, and Defendant's Motion for Partial Summary Judgment, ECF No. 83, is **DENIED as moot**. Judgment is entered for Defendant on all Counts.

---

[9] The Court notes that Defendant has four motions pending which allege, *inter alia*, improper expert disclosure by Plaintiff, including not disclosing complete opinions in expert reports, repeated delay of post-report-deadline expert depositions because Plaintiff's counsel had not yet disclosed pertinent information to the their own experts, and surprise "supplemental" reports and opinions furnished long after the expert report disclosure deadline—on the date of the deposition of the expert in question. Given the outcome of Defendant's Motion for Summary Judgment, the Court need not rule on these motions; however, the conduct of Plaintiff's previous counsel in regard to expert disclosure violated both the letter and the spirit of the Rules, such that some experts and/or their opinions may have been excluded by the Court had this case continued on to trial.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:      January 23, 2014

        ROBERT C. CHAMBERS, CHIEF JUDGE